FILED
 2015 Aug-24  AM 11:07
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| NORTH JACKSON PHARMACY, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No.: 5:14-cv-02371-SGC ) |
| McKESSON CORPORATION, et al., | ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

Presently pending is the motion to remand filed by plaintiff, North Jackson Pharmacy, Inc.  (Doc. 12).[1]  The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  (Docs. 19, 19-1).  As explained below, the motion to remand is due to be denied and Tom Smith is due to be dismissed as fraudulently joined.

### I.     FACTS AND PROCEDURAL HISTORY[2]

North Jackson Pharmacy initiated this lawsuit in the Circuit Court of Jackson County, Alabama.  (Doc. 1-1).   North Jackson Pharmacy is a locally

---

[1] Defendant, Tom Smith, has also filed a motion to dismiss under Rule 12(b)(6).  (Doc. 13).  The court stayed briefing on the motion to dismiss until the motion to remand was adjudicated.  (Doc. 14).  Given the conclusions reached in this memorandum opinion, the motion to dismiss is moot.

[2] As required when considering a motion to remand, the court has considered the complaint's factual allegations in the light most favorable to the plaintiff. *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997).

owned and operated community pharmacy located in Stevenson, Alabama. (*Id.* at 4). Defendant, McKesson Corporation, is a pharmaceutical distribution supplier incorporated in Delaware with a principal place of business in San Francisco, California. (*Id.* at 5). Defendant, Tom Smith, is an Alabama resident and "a facilitator for McKesson in Alabama." (*Id.* at 5).

McKesson supplied prescription drugs to North Jackson Pharmacy for approximately ten years prior to December 2014. (Doc. 1-1 at 5). The complaint alleges McKesson breached the supply contract on December 2, 2014, when it suddenly ceased filling North Jackson Pharmacy's orders. (*Id.* at 6). On these facts, the complaint asserts claims for breach of contract and tortious interference with business relations against McKesson and Tom Smith. (*Id.* at 6-8).

On December 9, 2014, McKesson removed on the basis of diversity, asserting that Tom Smith was fraudulently joined and attaching affidavits and other documents in support of this assertion. (Doc. 1). Among the evidence attached to McKesson's notice of removal are the contract at issue, an internal report produced by McKesson regarding an investigation of North Jackson Pharmacy's practices, and the affidavit of Tom Smith. (Docs. 1-2, 1-3, 1-5, 1-7).

The contract in question is a vendor agreement ("Agreement") between McKesson and the American Pharmacy Cooperative, Inc. ("APCI"), of which North Jackson Pharmacy is a member. (Doc. 1-7 at 2, 4; Doc. 15 at 5; *see* Doc. 1-2

at 1). The version of the Agreement governing at the time McKesson refused to fulfill North Jackson Pharmacy's orders was executed by McKesson and APCI in May 2013, and chronicled prior agreements superseded by the 2013 Agreement. (Doc. 1-7 at 2). Under the Agreement, McKesson was the exclusive supplier of products for APCI members. (*Id.* at 4). McKesson retained the sole discretion to limit the delivery of controlled substances to any APCI member in the event a member's conduct "would cause McKesson to be noncompliant with or in jeopardy of being noncompliant with any Laws," guidelines, or regulations governing controlled substances. (*Id.* at 32). Tom Smith is not a party to this agreement. (*Id.* at 2; Doc. 1-2 at 1).

In October 2014, Chris Sanderson, a manager in McKesson's regulatory affairs department, visited North Jackson Pharmacy and later prepared a report regarding North Jackson Pharmacy's pharmacists and its disbursement of controlled substances. (*See* Doc. 1-3 at 2-10). After reviewing the report, Jerry Carmack, also in McKesson's regulatory affairs department, noted: (1) the high percentage of controlled substances disbursed; (2) the high volume of controlled diet prescriptions disbursed; (3) the high volume of prescriptions purchased with cash; (4) the disciplinary records of the pharmacists; and (5) North Jackson Pharmacy's failure to utilize the prescription drug monitoring database. (Doc. 1-3 at 3). Based on these findings, Carmack recommended terminating delivery of

controlled pharmaceuticals to North Jackson Pharmacy. (*Id.*). McKesson's senior director of regulatory affairs, Gary Boggs, suspended further supply of controlled substances to North Jackson Pharmacy. (*See* Doc. 1-5 at 2).

Tom Smith's affidavit avers he is a McKesson employee working in the distribution center in Birmingham, Alabama, where he is a Vice President and General Manager responsible for overseeing sales and operations for McKesson's distribution of pharmaceuticals. (Doc. 1-5 at 2). Tom Smith avers that his responsibilities do not include investigating whether McKesson's customers are complying with federal laws and/or regulations concerning the sale and distribution of controlled substances; that responsibility lies with McKesson's regulatory affairs department. (*Id.*). Tom Smith also avers he had no role in the decision to terminate the Agreement with North Jackson Pharmacy. (*Id.*). Although already evident from review of the Agreement itself, Tom Smith avers he was not a party to the Agreement between APCI and McKesson. (*Id.*). Likewise, Tom Smith is not a party to any other contract with North Jackson Pharmacy. (*Id.*).

## II. DISCUSSION

That this lawsuit seeks damages in excess of the $75,000 jurisdictional threshold is not in dispute. The only issue is the existence of complete diversity among the parties. Whether Tom Smith was fraudulently joined will resolve this

question because, in determining whether complete diversity exists, courts should disregard the citizenship of a fraudulently joined defendant. *Henderson v. Washington Nat'l Ins. Co.,* 454 F.3d 1278, 1281 (11th Cir. 2006).

"In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe,* 113 F.3d at 1538 (citing *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989)).  Where, as here, a defendant argues there is no possibility the plaintiff can sustain a claim against a defendant,  "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir. 1998) (emphasis in original); *see Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).  The removing party bears a "heavy" burden of establishing federal diversity jurisdiction via fraudulent joinder. *Crowe*, 113 F.3d at 1538.

"The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez,* 139 F.3d at 1380.  The "proceeding appropriate for

resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)." *Crowe,* 113 F.3d at 1538 (*quoting B, Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 n. 9 (5th Cir. Unit A 1981)). In such a proceeding, the district court must "resolve all questions of fact . . . in favor of the plaintiff." *Cabalceta,* 883 F.2d at 1561. However, "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005) (plaintiff's failure to rebut affidavits submitted with notice of removal left "no question of fact for the court to resolve").

In this case, Defendants attached to their notice of removal affidavits and other evidence to support their contention that Tom Smith was fraudulently joined. In response, North Jackson Pharmacy has submitted the affidavit of Michael E. Gurley, Jr., one of its attorneys in this matter, as well as other evidence. (Doc. 12-1). However, none of the evidence submitted by North Jackson Pharmacy is pertinent to the question of fraudulent joinder. Instead, the affidavit and other evidence demonstrate McKesson's contacts within the Northern District of Alabama. While this evidence would be germane to the question of personal jurisdiction, personal jurisdiction is not at issue here. Additionally, it is undisputed that, for purposes of diversity jurisdiction, McKesson is a citizen of Delaware and California. Accordingly, the evidence submitted by McKesson in support of its

argument regarding fraudulent joinder is effectively undisputed. *See Legg*, 428 F.3d at 1322. The two claims asserted against Tom Smith are addressed in turn.

### A. Breach of Contract

Under Alabama law, a plaintiff asserting breach of contract must establish "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Campbell v. Naman's Catering, Inc.*, 842 So. 2d 654, 658 (Ala. 2002) (quoting *S. Med. Health, Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995)). Because the Agreement was executed solely by APCI and McKesson, Defendants contend Tom Smith cannot be held liable for its breach. (Doc. 15 at 16-19). Likewise, Defendants contend the undisputed evidence shows that Tom Smith had no involvement in the decision to cease supplying controlled pharmaceuticals to North Jackson Pharmacy. (*Id.* at 19).[3] While North Jackson Pharmacy replied in support of its motion to remand, it did not address these arguments. (*See generally* Doc. 16).

Based on the undisputed evidence that Tom Smith was not a party to the Agreement, North Jackson Pharmacy cannot demonstrate the "*possibility* of stating

---

[3] In concluding there is no possibility that North Jackson Pharmacy can state a valid claim for breach of contract against Tom Smith, the court has not relied on the affidavit's statements regarding Tom Smith's lack of involvement in McKesson's decision to terminate the Agreement. *See Crowe*, 113 F.3d at 1538 (the jurisdictional inquiry necessary to resolve a claim of fraudulent joinder "must not subsume substantive determination" and "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law") (quoting *B, Inc.*, 663 F.2d at 548-50).

a valid cause of action" for breach of contract against Tom Smith. *Triggs,* 154 F.3d at 1287; *see Pate v. Rollison Logging Equip.*, 628 So. 2d 337, 343 (Ala. 1993) (affirming summary judgment for insurance broker who could not "be liable for breach of contract because he . . . was not a party"); *Ligon Furniture Co., Inc. v. O.M. Hughes Ins., Inc.,* 551 So. 2d 283, 285 (Ala. 1989) (affirming summary judgment for defendants on claim for breach of contract because defendants "were not parties"); *Holderfield v. Allstate Ins. Co.*, No. 13-074-RBP, 2014 WL 1600309, *2 (N.D. Ala. April 21, 2014) (finding plaintiff had no possibility of stating a valid claim for breach of contract against non-party to the contract); *see also Legg*, 428 F.3d at 1322 (plaintiff's failure to rebut affidavits submitted with notice of removal left "no question of fact for the court to resolve" in favor of the plaintiff).

### B. <u>Tortious Interference With Business Relations</u>

Next, the complaint alleges Defendants (including Tom Smith) have interfered with North Jackson Pharmacy's relations with its patients and "have caused North Jackson Pharmacy to lose business and income by forcing North Jackson Pharmacy patients to do business with other distant pharmacies not encumbered by" the Agreement. (Doc. 1-1 at 8). Defendants contend there is no possibility that North Jackson Pharmacy can state a valid cause of action for tortious interference against Tom Smith because he is not a stranger to the business relationship between North Jackson Pharmacy and its patients. (Doc. 15 at 20-24).

Defendants also rely on Tom Smith's affidavit to show that he did not participate in or contribute to the decision to terminate the Agreement. (*Id.* at 24-25).[4]

Under Alabama law, a plaintiff claiming tortious interference with business relations must show: "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Group, LLC v. PRS II, LLC,* 32 So. 3d 5, 14 (Ala. 2009).[5] As relevant here, "a plaintiff asserting a tortious-interference claim bears the burden of proving that the defendant is a 'third party' or 'stranger' to the contract or business relationship with which the defendant allegedly interfered." *Waddell & Reed, Inc. v. United Investors Life Ins. Co.,* 875 So. 2d 1143, 1154 (Ala. 2003). An entity is not a stranger if it is a "participant" in a relationship. *Id.* at 1157. A participant is one involved "in a business relationship arising from interwoven contractual arrangements that include the contract." *Id.* A plaintiff claiming tortious interference must show not only a defendant's distance from the contract, but also

---

[4] As with the claim for breach of contract, the court has not relied Tom Smith's averments regarding his lack of involvement with McKesson's decision to terminate the Agreement. *See* note 3, *supra*.

[5] The tort of tortious interference with business relations substantially overlaps with tortious interference with contractual relations. *Glenn Const. Co., LLC v. Bell Aerospace Servs., Inc.*, 785 F. Supp. 2d 1258, 1279 (M.D. Ala. 2011); *Hope for Families & Cmty. Serv. v. Warren,* 721 F. Supp. 2d 1079, 1177 (M.D. Ala. 2010) (explaining that tortious interference with a business relationship is a separate tort from tortious interference with a contractual relationship because the latter "presupposes the existence of an enforceable contract but that otherwise, the elements of both torts overlap") (quotations and alterations omitted).

9

distance from "the business relationship giving rise to and underpinning the contract." *Id.* at 1154-55 (emphasis omitted) (*quoting Atlanta Mkt. Ctr. Mgmt. Co. v. McLane,* 503 S.E.2d 278, 283 (Ga. 1998).

The Alabama Supreme Court has stated that "[a] defendant is a party in interest to a business or contractual relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." *Tom's Foods, Inc. v. Carn,* 896 So. 2d 443, 454 (Ala. 2004)). Additionally, "[p]arties to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships." *Waddell,* 875 So. 2d at 1157 (emphasis omitted) (quoting *LaSonde v Chase Mortg. Co.,* 777 S.E. 2d 822, 824 (Ga. App. Ct. 2003). Furthermore, a third-party "involved in creating th[e] relationship" between two other parties is not a stranger to that relationship. *Tom's Foods,* 896 So. 2d at 455.

The Eleventh Circuit has recognized the Alabama Supreme Court's enumeration of several circumstances in which a party is not a stranger for purposes of tortious interference. *MAC East, LLC v. Shoney's*, 535 F.3d 1293, 1297 (11th Cir. 2008). "A defendant is not a stranger to a contract or business relationship when: '(1) the defendant is an essential entity to the purported injured relations; (2) the allegedly injured relations are inextricably a part of or dependent upon the defendant's contractual or business relations; (3) the defendant would

benefit economically from the alleged injured relations; or (4) both the defendant and the plaintiff are parties to a comprehensive interwoven set of contract relations.'" *Id.* (quoting *Waddell,* 875 So. 2d at 1156).

Here, the complaint alleges Tom Smith was "a facilitator for McKesson in Alabama," and the undisputed facts establish that he was a McKesson employee who oversaw sales and distribution of pharmaceuticals to North Jackson Pharmacy. (Doc. 1-1 at 5; Doc. 1-5 at 2). In its motion to remand, North Jackson Pharmacy contends Tom Smith "participated in and was active in all aspects of the sales and operations in Alabama as to the controlled substances sold to" the pharmacy. (Doc. 12 at 4). These allegations and undisputed facts establish that: the injured relations between North Jackson Pharmacy and its patientss "are inextricably a part of or dependent upon" the business relations with Tom Smith; and (2) both Tom Smith and North Jackson Pharmacy are parties to "a comprehensive interwoven set of business relations" involving McKesson, Tom Smith, North Jackson Pharmacy, and the pharmacy's patients. *Waddell,* 875 So. 2d at 1156. Accordingly, as a matter of law, Tom Smith was not a stranger to North Jackson Pharmacy's business relations with its patients. *See Cochran v. Five Points Temporaries, LLC*, 907 F. Supp. 2d 1260, 1272-74 (N.D. Ala. 2012) (dismissing for failure to state a claim for tortious interference where parties were involved in interwoven set of contractual relations).

North Jackson Pharmacy's reply in support of the motion to remand attempts to distinguish the cases relied upon by Defendants to show that Tom Smith was not a stranger for purposes of tortious interference. In particular, North Jackson Pharmacy contends that "[i]n each case [relied upon by Defendants] there is a direct relationship between the parties" and that no such relationship exists between Tom Smith and North Jackson Pharmacy's patients. (Doc. 16 at 2). Even accepting North Jackson Pharmacy's interpretation of the cases relied upon by Defendants, there is no requirement of a "direct relationship" in order to show that a defendant is not a stranger to a business relationship. *See Lynn v. Romar Marina Club, LLC,* No. 07-0173, 2009 WL 4667387, *18 (S.D. Ala. Dec. 1, 2009) (granting motion for summary judgment to defendant after finding he was not a stranger to a real estate transaction where his financing was essential to the ability of the parties to the contract to close on the transaction); *Glenn Const.,* 785 F. Supp. 2d at 1282 (granting summary judgment for engineer hired by co-defendant after finding engineer, who was not directly related to plaintiff, was not a stranger to the contract between the plaintiff and co-defendant). Accordingly, even construing the facts in the light most favorable to North Jackson Pharmacy, its arguments are not sufficient to overcome the conclusion that Tom Smith was not a stranger to the business relations between North Jackson Pharmacy and its patients.

As explained above, North Jackson Pharmacy cannot demonstrate the "*possibility* of stating a valid cause of action" for tortious interference against Tom Smith. *Triggs,* 154 F.3d at 1287; *see also Legg*, 428 F.3d at 1322 (plaintiff's failure to rebut affidavits submitted with notice of removal left "no question of fact for the court to resolve" in favor of the plaintiff).

### III. CONCLUSION

For all of the foregoing reasons, there is no possibility that North Jackson Pharmacy can state a valid claim against Tom Smith for either breach of contract or tortious interference. As such, Tom Smith has been fraudulently joined and his citizenship will be disregarded for purposes of evaluating diversity jurisdiction. *Henderson*, 454 F.3d at 1281. Because the amount in controversy exceeds $75,000 and because complete diversity of citizenship exists between North Jackson Pharmacy and McKesson, the motion to remand (Doc. 12) is **DENIED.** The claims against Tom Smith will be dismissed by separate order.

In light of the foregoing, the Clerk is **DIRECTED** to **TERM** as **MOOT** the motion to dismiss Tom Smith. (Doc. 13).

**DONE** this 24th day of August, 2015.

*/s/ Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE